Statement.
MONROE, J.
Plaintiff, who asserts that she is an heir of Joseph Gahlman, deceased, sues to recover a one-fifth interest in certain described real estate, formerly owned by him in this city, alleging, in substance, that Fred. Gahlman has caused to be recorded an instrument purporting to be a sale of said property to him, and that “said pretended sale is a simulated transaction and a fraud, in violation of * * * petitioners’ rights,1” and, “if ever executed by the said •deceased Joseph Gahlman, is no other than a donation, mortis causa,” and, “not having been made in the form prescribed by law, is null and void.” She further alleges that the “donee, Fred. Gahlman, is a minister of religious worship, who attended the decedent •during his last illness, and * * * cannot receive any benefit from donations, inter vivos or mortis causa, made in his favor by the said decedent,” and that, if said transaction should be held to be a sale, it is subject to rescission on account of lesion. Wherefore she prays that defendant (who is a nonresident) be cited, through a curator ad hoc, and that she have judgment “annulling and setting aside the sale of the above described property,” that her co-heirs, whom she names, be cited, and “that there be further judgment,” decreeing her and them to be the owners of said property. The parties thus referred to intervened and joined plaintiff in her demands, and defendant’s father (who is shown to be a brother of decedent) was also made a party to the suit, and joined in the defense, which is, in substance, a denial of the allegations of the petition and of plaintiff’s right to recover, with averments to the effect that the conveyance attacked is valid, and that the contract, partially expressed thereby, was that appearer was to furnish Joseph Gahlman with a home, and with the necessities of life, so long as he might live, and bury him, when dead, said Gahlman in the meanwhile to collect and retain the revenues of his property, which contract, as defendant avers, was executed by him in full.
The written instrument evidencing the contract referred to in the petition reads, in part, as follows, to wit:
“Warranty Deed.
“The grantor, Joseph Gahlman, unmarried, of Hoopeston, * * * Illinois, for, and in consideration of, one dollar, and other good and valuable 'Considerations, in hand paid, conveys and warrants to Rev. F. Gahlman * * * the following described real estate, to wit: [Here follows a description of the property in question.]” .
This instrument was executed, and then acknowledged before a notary public (in Illinois), in presence of two witnesses April SO, 1904, and, the signature of the grantor having been attached before a notary in New Orleans (in February, 1905), it was recorded in the conveyance office of this city in May following. The evidence (introduced without objection) shows that on April 6, 1904, Joseph Gahlman arrived at the residence of his nephew, the defendant, in Hoopeston, 111., and there proposed to the latter that he would convey to him his real estate in New Orleans if he (the nephew) would agree to give him (the uncle) a home during the remainder of his life, and bury him, when dead, with the condition that he (the uncle) should continue to collect and enjoy the revenue of the property so to be conveyed; that the proposition so made was accepted by defendant, and the conveyance herein above mentioned executed; that at that time Jo *353 seph Gahlman had the appearance of a man who might live for a number of years, but that he was taken sick in June, and ciied on July 16, 1904, after an illness of about five weeks, and that defendant thereupon went ■into possession of the property, and has so remained; that defendant fully executed the contract thus entered into by furnishing his uncle with a comfortable home, with which he expressed himself satisfied, and by caring for him, and paying his expenses during his illness, and burying him after his death, and that the board 'and lodging so furnished by him were worth $30 per month.
Opinion.
Plaintiff and interveners do not allege the facts upon which they base their assertion that they are the heirs of Joseph Gahlman, and there is no evidence in the record tending to show that they are in any way related to him, or have any interest in his estate. If they are his collateral heirs, as has been assumed in the argument, they have no standing to attack the contract made by him for fraud, as simulated or as a donation made in violation of Oiv. Code, art. 1497, and, if they had such standing, the evidence wholly disproves their allegations in those respects. Nor is the contract in question open to attack as a donation, made during last -illness, to an attending minister, since it is not a donation, and it was entered into several months before Gahlman was seized with the illness of which he died. Nor yet can it be successfully -assailed for lesion, since it is -an aleatory contract, in the making of which there appears to have been no unfair dealing and no great disproportion between the value of the property conveyed -and the consideration received, the property having been the naked ownership of -real estate valued at $3,30,0, and the consideration having been the obligation of the defendant to maintain and care for the grantor during the remainder of his life, and to bury him, when dead. The learned counsel for • plaintiff- argues that the contract is not valid as a sale, because of the uncertainty as to the price, or, as a donation inter vivos, because there was-no acceptance nor delivery of the property, and the grantor retained the usufruct, and he concludes that it must be illegal. We are, however, unable to concur in that view. Our predecessors in this court have said:
“The right to rescind a sale for lesion beyond moiety is the only restraint on the liberty of a citizen to bind himself and his property according to his own judgment.” Demaret v. Hawkins, 8 La. Ann. 483.
There are some other restrictions which, might have been included, such as that imposed by Civ. Code, art. 1497, which declares that “the donation shall, in no case, divest the donor of all his property; he must reserve for himself enough for his subsistence” ; that imposed by Civ. Code, art. 1481; that resulting from the establishment of the legitime in favor of ascendants and descendants, etc., but it is certainly true that, in the absence of some special prohibition founded in considerations of public policy, a sane man is allowed to do as he pleases with his ow'n, and we are of opinion that it was entirely competent for Joseph Gahlman to convey the property in question to his nephew in consideration of the obligation which the latter is shown to have assumed, it appearing that the grantor reserved “to himself enough for his subsistence.” It is true that, whether a particular contract is a sale or a dona-' tion is a question of law, but it may be neither the one nor the other, and yet operate a transfer of property.
This court, dealing with that question in a case where, as in this, the contract had been' executed, has said:
“The plaintiffs contend that, if the act referred to be considered a sale, it is void for want of a fixed and determinate price. * ♦ * If it be considered a donation, the assignment is void, not having been passed before a notary public and two witnesses. * * * There cannot be any doubt that our courts would consider the in *355 strument invalid as a donation, and it may not be (technically considered) a sale under the Civil Code; but it does not necessarily follow that the contract itself, after its execution, is to be considered void because it cannot be classed under the contract of sale.” Trop. Vente, No. 140; Helium v. Minor, 12 La. Ann. 125.
And, again, it has been said:
“The contract may be innominate, and yet convey ownership.” Phelan v. Wilson, 114 La. 823, 38 South. 570.
In fact, the law in terms provides for in-nominate contracts. Civ. Code, art. 1777. And it.also provides that:
“If the cause expressed in the consideration should be one that does not exist, yeti the contract cannot be invalidated if the party can show the existence of a true and sufficient consideration.” Civ. Code, art. 1900.
Applying this law and these rulings to the matter at issue, we have aj contract purporting to be a sale, the consideration of which is said to have been $1, a consideration which, in all probability, had no existence, and which, in any event, would have been insufficient under our law, but the party has shown (to use the language of the law) “the existence of a true and sufficient consideration,” and (again quoting the text of the law) “the contract cannot be invalidated.” The learned counsel quotes from the opinion in the case of Ackerman v. Larner, 116 La. 101,[1] to the effect that “contracts whereby individuals have transferred their property to others, burdened with the charge that they should be maintained during their lives, have heretofore been dealt with * * * as onerous donations” ; and that the court found no reason for pursuing a different course in that case. The case cited was, however, one in which it was believed that the plaintiff had transferred all of her property, without reserving enough for her subsistence and such eases have always been held to fall within the prohibition of Civ. Code, art. 1497.
It does not follow, however, because of that jurisprudence that every transfer of property which has for its consideration an obligation of maintenance is to be regarded' as a donation. To the contrary, cases such as this fall rather within the doctrine approved by this court in the case of Kirk et al. v. Railroad Co., 51 La. Ann. 667, 25 South. 457, wherein it was held that a grant of a right of way, for the consideration of $1 and the advantages to result from the building of a railroad, was not a donation, pure and simple, but a commutative contract, and that the consideration was sufficient to sustain, the grant, even though the expectations of the grantee with regard to the advantages might never be realized.
Finally, it may be said, if the grantor had made the conveyance in question in consideration of the obligation of the defendant to provide him with a home and care for him. for 10 years, and defendant had fully discharged that obligation, he (the grantor)would not have been allowed to recover the property so conveyed, on the ground that such a contract is unknown to our law, and' the (assumed) collateral heirs of the grantor-occupy no stronger position than he would have occupied in the hypothetical case mentioned. We, therefore, find no error in the-judgment appealed from, which rejects the-demands of the plaintiff and interveners and recognizes the defendant as the owner of the property claimed by them, and it is accordingly affirmed, at their (plaintiff’s and: interveners’) cost.

 40 South. E81.