Benjamin F. DORDEN,
Plaintiff-Appellant,

v.

C.H. HEIST CORP., et al.,
Defendants-Appellees.

No. 83–3188.

United States Court of Appeals,
Fifth Circuit.

Oct. 15, 1984.

Rehearing Denied Nov. 5, 1984.

Frederick J. Gisevius, Jr., New Orleans, La., for plaintiff-appellant.

Wood Brown, III, New Orleans, La., for Heist.

Daniel J. Caruso, New Orleans, La., for Penn Truck.

Charles W. Schmidt, III, Lance R. Rydberg, New Orleans, La., for Bison Ford.

Thomas M. Nosewicz, New Orleans, La., for T–W Truck & Travelers.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before RUBIN, REAVLEY and TATE, Circuit Judges.

TATE, Circuit Judge:

This is a Louisiana diversity action. Pursuant to Fed.R.Civ.P. 54(b) certification, the plaintiff Dorden appeals from the dismissal by summary judgment of his tort suit against one of the defendants, a New York corporation ("Heist"). Dorden was seriously injured by the crash of a truck that he was driving for his employer, a Texas corporation that was a wholly-owned subsidiary of Heist.

The district court held that Heist was statutorily immune, La.R.S. 23:1032 (1976), 1061 (1950), from the tort recovery sought against it for the defective design, manufacture, and assembly of the truck, because: (1) as the parent-corporation principal of its subsidiary corporation (the employer of Dorden), Heist was exclusively liable to the plaintiff Dorden for Louisiana worker's compensation; and (2) at any rate, as a stockholder of the corporate employer of Dorden, Heist was for similar reasons immune from tort suit. We reverse, finding that disputed issues of material fact prevent summary judgment on the (1) ground, and that the district court erred as a matter of law as to the (2) ground.

### I. Parent Corporation a Statutory Principal of a Wholly Owned Subsidiary

Under the Louisiana Worker's Compensation Law, La.R.S. 23:1021 *et seq.*, the compensation remedy afforded an injured employee against his employer or "any principal" thereof is exclusive, thus barring a tort remedy. La.R.S. 23:1032 (1976). A "principal" is a person that "undertakes to execute any work, which is part of his trade, business or occupation" through a "contractor," in which event the principal is liable in compensation benefits to employees of the contractor injured in the execution of the work so undertaken as "if the employee had been immediately employed by him [the principal]." La.R.S. 23:1061 (1950).[1] *See also* La.R.S. 23:1032 (1976), defining "principal" for purposes of the statutory immunity as "any person who undertakes to execute any work which is a part of his trade, business or occupation."

In *Lewis v. Exxon Corporation,* 441 So.2d 192 (La.1983), the Supreme Court of Louisiana recently summarized the purpose[2] and the requirements[3] of a tort im-

---

**1.** La.R.S. 23:1061 (1950) provides:

Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employ-

ee under the employer by whom he is immediately employed.

Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor.

**2.** The original policy behind holding principals liable for the injuries sustained by the employees of his contractors was to prevent principals from contracting out their work in order to avoid workers' compensation liability. *Johnson v. Alexander,* [419 So.2d 451 (La. 1982) ] at 454; *Broussard v. Heebe's Bakery, Inc.,* 263 La. 561, 572–73, 268 So.2d 656, 660 (1972); 1C A. Larson, The Law of Workmen's Compensation § 49.00 (1982); W. Malone & H. Johnson, Workers' Compensation, [La. Civ.L. Treatise Vol. 13, 1980]. As a trade-off,

munity claimed by a compensation principal under La.R.S. 23:1032, 1061. Stating that "the facts of each individual case" must be examined "to determine whether a particular activity is within the scope of a principal's trade, business or occupation," the court observed that, in general, to be so considered, the work must be "routine or customary . . . or some other type of activity which is necessary for the principal's day to day activity" or, "[p]ut another way," "those activities that are an actual part of the nature and purpose of the principal's enterprise." *Lewis, supra,* 441 So.2d at 198. Also, "the entire scope of the work contract must be considered" in order to determine whether the work in which the injured employee of the contractor was injured was part of the principal's trade, business or occupation. *Id. See also Hodges v. Exxon Corporation,* 727 F.2d 450, 453 (5th Cir.1984).

■ Under these jurisprudential tests, which the district court felt to be "inapposite" on the basis of two Louisiana intermediate court decisions (to be discussed below), there were genuine disputes of material fact concerning whether the plaintiff's immediate employer, although a wholly-owned subsidiary of Heist, was performing part of Heist's trade, business, or occupation. As will be shown, the employer was a separate and distinct corporation, with its own employees, assets, and customers, performing work not shown to be part of Heist's routine and customary day to day activity performed by its own employees. Under usual Louisiana compensation principles, Heist would no more be liable as a "principal" for worker's compensation to injured employees of its corporate subsidiary than it would be liable under ordinary

tort principles for the subsidiary's employees' torts that injured third persons.

■ The district court dismissed the plaintiff Dorden's claim by granting Heist's motion for summary judgment. A grant of summary judgment is appropriate only where it appears from the pleadings, depositions, admissions, answers to interrogatories, and affidavits—considered in the light most favorable to the opposing party—that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Williams v. Shell Oil Company,* 677 F.2d 506, 509 (5th Cir.), *cert. denied,* 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 933 (1982), *quoting,* Fed.R.Civ.P. 56(c). Any doubt as to the existence of a material fact is to be resolved against the moving party. *Id.; Murphy v. Georgia-Pacific Corporation,* 628 F.2d 862, 866 (5th Cir.1980).

A. *Factual Showing*

The factual context, based upon the "depositions, answers to interrogatories, and admissions on file, together with the affidavits," Fed.R.Civ.P. 56(c), construed as required most favorably to the opponent (Dorden) to the summary-judgment motion, show:

The plaintiff was hired as a hydroblaster and truck driver by Hydro-Tech Corporation ("Hydro-Tech"), a Texas corporation, and his duties required him to drive the heavily loaded truck that crashed while he was at work. Hydro-Tech was engaged in the business of furnishing industrial cleaning for refineries and chemical companies in Louisiana, Texas, and Alabama. The allegedly defective truck which crashed had been designed, "specially manufac-

---

similar to that given to regular employers, statutory employers have been given immunity from tort suits by their statutory employees. R.S. 23:1032, 1061. Because of the ease of acquiring insurance, and the great protection from tort liability which workers' compensation provides, statutory employer status is desirable for principles against whom tort claims are made by workers employed by others.

*Lewis, supra,* 441 So.2d at 197.

**3.** Two elements of the § 1032 definition must be met in order for a principal to be considered a statutory employer. First, the "work" must be a part of the principal's "trade, business or occupation." Second, the principal must have been engaged in that trade, business or occupation at the time of the injury. Absent either of these two conditions, the injury will not come within the scope of the workers' compensation program.

*Lewis, supra,* 441 So.2d at 197–98.

tured," and assembled in New York by Heist, a New York corporation with executive offices in Florida, for use as a "pump truck" in the high-pressure industrial cleaning business, in which both Heist and Hydro-Tech were involved. Hydro-Tech had leased the truck from and had paid rentals to Heist. Hydro-Tech's Louisiana manager had authority to hire and fire Hydro-Tech employees, including the plaintiff Dorden. Hydro-Tech (but not Heist) paid state income and franchise taxes in Louisiana. So far as the record shows, Hydro-Tech secured and billed its own customers, maintained its own employment records, had assets in its own name, without day-to-day supervision or intervention by Heist.

In contending that summary judgment holding that Heist was Hydro-Tech's statutory principal was nonetheless proper, Heist relies solely upon its statement of allegedly uncontested facts attached to its motion for summary judgment. These pertinently show:

Hydro-Tech was a wholly-owned subsidiary of Heist. Heist "provided or supervised all accounting and administrative services for Hydro-Tech and maintained all bank accounts therefor." "[P]olicy for the management of Hydro-Tech was provided by Heist, and the management personnel of Hydro-Tech were held accountable by Heist for the successes and failures of their corporation." Although Heist had other facets of its business that Hydro-Tech did not share, "Heist and Hydro-Tech are *generally* in the same business, the furnishing of high-pressure cleaning." Hydro-Tech's equipment, premises, and payroll checks show it as a division of Heist. Heist's annual reports filed with the Securities and Exchange Commission show Hydro-Tech as "a wholly owned subsidiary and an operating division of Heist."[4]

This showing, it should be noted, is negative of any indication that Heist undertook through Hydro-Tech to perform work that was part of Heist's trade, business, or oc-

cupation, as defined by the Louisiana supreme court in *Lewis, supra*. Likewise, with regard to a dispute of material fact, the showing is silent with regard to the affidavits and depositions earlier filed on behalf of Heist, offered by it in support of its motion to dismiss for lack of personal jurisdiction of the action filed in Louisiana federal district court; these emphasized the independent and separate nature of Hydro-Tech from Heist, and Heist's lack of supervision or control of Hydro-Tech, such as would dispute any factual contention that Hydro-Tech was an alter ego of Heist. *Cf., Baker. v. Raymond International, Inc.,* 656 F.2d 173, 179–81 (5th Cir.1981).

**B.  *The Trial Court Ruling***

The district court concluded that the statutory employer-principal decisions relied upon by the plaintiff Dorden were "inapposite" because the present facts involve the "distinguishable" issue of whether a subsidiary is so dominated by its parent corporation as to be considered a principal for workmen's compensation exclusive-remedy purposes. In therefore granting summary judgment on this domination theory, the court relied upon *Coco v. Winston Industries, Inc.,* 330 So.2d 649 (La.App. 3d Cir. 1975), *amended on other grounds,* 341 So.2d 332 (La.), and *Nichols v. Uniroyal, Inc.,* 399 So.2d 751 (La.App. 3d Cir.1981), which were felt to be "virtually indistinguishable from the case at bar."

*Nichols,* however, involved a wholly-owned subsidiary organized solely to provide management and accounting services for stores owned by the parent corporation—as distinguished from a subsidiary such as Hydro-Tech that may have been engaged in business to service its own customers in the general public, and may not have functioned solely to perform services for the parent corporation that were part of the latter's trade, business, or occupation. Likewise distinguishably, *Coco* involved a wholly-owned subsidiary that

**4.** Although not perhaps a material dispute, Heist's Securities and Exchange Commission report filed in the record seem to list Hydro-Tech only as a wholly-owned subsidiary. Reports filed R. III, p. 534 (p. 11) and p. 525 (p. 11).

"was in existence purely for the benefit of" the parent corporation, which subsidiary "had no actual existence other than as a alter ego of the latter," and both of which corporations "were completely run by one individual." *Baker v. T.L. James & Co., Inc.*, 398 So.2d 1223 (La.App. 4th Cir.1981) (distinguishing *Coco* and reversing the trial court that in reliance upon *Coco* had granted summary judgment in favor of the dominant corporation).

*Baker, supra,* held that a related or dominant corporation could not claim tort immunity as a principal under La.R.S. 23:1061, for an injury that had been sustained by the employee of another corporation allegedly performing the principal's work. To avail itself of this tort-immune status, *Baker* held, the alleged principal must show that the other corporation had undertaken to perform part of the work shown to be part of the principal's trade, business or occupation. *Baker*, 398 So.2d at 1226. This requirement, we believe, is consistent with the statutory intent and the Louisiana jurisprudence, and it is not here met. And, with regard to the alter ego contention, as *Baker* indicated, *id.:*

> Generally, common ownership, identity of management, and the presence of a common insurer are not enough to create identity between parent and subsidiary for compensation purposes. Probably the most significant factor is actual control, and if the subsidiary is in practice not only completely owned but complete-

ly controlled by the parent, identity may well be found and immunity conferred. 2A Larson's Workmen's Compensation Law (1983), § 724 at p. 14–191.

Under the appropriate Louisiana jurisprudence, therefore, there are disputed issues of material fact governing whether Heist can claim tort-immunity as a principal. Summary judgment was improvidently granted.

## II. *Stockholder of Corporate Employer Immune from Tort Suit by Injured Corporate Employee?*

As an alternative basis for dismissing Dorden's tort claim against Heist, the district court relied upon a 1976 amendment to the Louisiana Worker's Compensation Law, La.R.S. 23:1032 (1976). The amendment provided for statutory immunity from suit in tort to "any officer, director, *stockholder*, partner or employee" of the employer or principal of an employee injured in the course and scope of his employment. La.R.S. 23:1032 (1976) (emphasis added).[5] In finding the above-stated immunity applicable, the district court found that, as the sole stockholder of Hydro-Tech, Heist was a "stockholder" within the meaning of the statute and consequently immune from Dorden's suit in tort.

We disagree. For reasons to be stated, the subject statutory immunity is not applicable to the challenged acts of Heist in this case.

---

**5.** La.R.S. 1032 (as amended in 1976) provides:

The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease. For purposes of this Section, the word "principal" shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to

perform and contracts with any person for the execution thereof.

Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.

The immunity from civil liability provided by this Section shall not extend to: 1) any officer, director, stockholder, partner or employee of such employer or principal who is not engaged at the time of the injury in the normal course and scope of his employment; and 2) to the liability of any partner in a partnership which has been formed for the purpose of evading any of the provisions of this Section.

The Supreme Court of Louisiana has recently noted the legislative purpose and intent of the 1976 amendment to La.R.S. 23:1032, adding to the compensation statute the "officer, director, stockholder, partner or employee" immunity from tort suit. As stated in *Bazley v. Tortorich*, 397 So.2d 475, 479 (La.1981), "the amendment was enacted to provide employers relief from the cost of furnishing liability insurance to executive officers and other employees," since prior to the amendment the availability of such suits had meant that "the employer's enterprise would in the end pay for the tort remedy," resulting in a "denial to the employer of much of the practical advantage of the exclusive remedy provision." *See also* Malone and Johnson, 14 Louisiana Civil Law Treatise: Workers' Compensation, § 364 at 155–56 (1980).

The immunity so legislatively intended thus related to those acts of corporate functionaries that injured corporate employees for which a compensation remedy against the employer had traditionally been available. Indeed, the 1976 amendment to La.R.S. 23:1032 (quoted at note 5, *supra*) specifically limited its immunity for acts in which the corporate functionary had engaged "in the *normal* course and scope of his employment."

In the present instance, the plaintiff Dorden sues to hold Heist, the stockholding parent corporation, for its negligence in the design, manufacture, and assembly of a truck that caused Dorden's injuries. The manufacture, design, and assembly of a truck is not within the "normal" course and scope of a shareholder's duties within the meaning of the statute—*i.e.*, Heist is not sued in its capacity as shareholder of its subsidiary, Dorden's employee.

The 1976 statutory immunity was not legislatively intended to exempt, simply because of the happenstance of a tortfeasor's stock ownership, a tortfeasor from tort liability for any tortious act whatsoever he committed that injured an employee of a corporation in which the tortfeasor holds stock. Rather, by the wording of the statute, the provision was legislatively intend-ed to exempt the shareholder from tort liability to an injured corporate employee only for acts committed in the normal course and scope of his function as stockholder.

We therefore conclude that the district court erred in granting Heist summary judgment on the ground that Heist was a stockholder of the injured plaintiff's corporate employer.

*Conclusion*

Finding that the district court erred in granting summary judgment under either alternative ground, we reverse and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**